**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| MATTHEW MCQUOWN, | : | Case No. 3:18-cv-32 |
| Plaintiff, | : | |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

## I. Introduction

Plaintiff Matthew McQuown applied for period of disability, Disability Insurance Benefits, and Supplemental Security Income on February 7, 2013, asserting that he could no longer work a substantial paid job. His claims were denied initially and upon reconsideration. After a hearing, Administrative Law Judge (ALJ) Emily Ruth Statum concluded that he was not eligible for benefits because he is not under a "disability" as defined in the Social Security Act.

Plaintiff appealed and the Appeals Council remanded his case back to an ALJ with instructions to obtain updated treatment records; further consider the nature, severity, and limiting effects of all of Plaintiff's impairments; reconsider his residual functional capacity assessment; and obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupation base. After a

second hearing, ALJ Eric Anschuetz determined that Plaintiff was not under a disability and accordingly, was not eligible for benefits. Plaintiff brings this case challenging the Social Security Administration's denial of his applications for benefits.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #12), Plaintiff's Reply (Doc. #13), and the administrative record (Doc. #6).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Anschuetz's non-disability decision.

## II. Background

Plaintiff asserts that he has been under a "disability" since February 1, 2009. He was forty-one years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). He has at least a high school education. *See id.* §§ 404.1564(b)(4), 416.964(b)(4).

### A. Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Anschuetz that he stopped working in 2009 because he had a herniated disc in his back and was no longer able to lift or move anything. (Doc. #6, *PageID* #101). He worked in a warehouse as a shipping and receiving clerk. *Id.* at 104. His job included "[c]onstant shifting of ATM-like machines. Shifting, moving, palletizing. Constant bent over." *Id.* at 105. He frequently had to lift and/or carry a hundred pounds. *Id.* After leaving his job in 2009, he tried to work with drywall construction and then roofing but was not able to do either job. *Id.* at 104.

When asked to describe his back pain, Plaintiff responded, "It's kind of like … you got the wind knocked out [of] you…. It feels like you're getting hit all over with a sledge hammer." *Id.* at 131-32. His pain affects his ability to talk to people or concentrate/focus on tasks. *Id.* at 132. At home, he spends three-quarters of the day lying on his left side—the only thing that helps relieve his pain. *Id.* Plaintiff does not lift anything that weighs more than ten pounds. *Id.* at 133-34. He has a cane but only uses it at home because he is embarrassed to use it in public. *Id.* at 131. As a result of his back problems, Plaintiff is unable to stoop. He cannot reach the bottom of his fridge and he has fallen many times trying. *Id.*

Plaintiff takes Vicodin and muscle relaxers three times a day and an extended-release medication, Hysingla, for pain. *Id.* at 111. If his pain level is "very high," he takes more. *Id.* His pain level increases if he gets up or sits down. He tossed and turned in bed the night before the hearing and was in "extra pain" because of it. *Id.* at 112. Before the hearing, he took a muscle relaxer, Motrin, Lyrica, and Vicodin. *Id.* Lyrica makes him "very tired" and "very groggy." *Id.* at 132. As a result, he takes naps during the day. *Id.*

A year before the hearing, he had back surgery—a laminectomy. *Id.* at 101. After surgery, Plaintiff's doctor told him that his spine crumbled in his hands. *Id.* His doctor prescribed Fosteum to harden Plaintiff's bones so that he can have a fusion surgery. *Id.* at 109-10. Surgery helped Plaintiff's sciatica pain in his left lower leg. *Id.* at 102. However, he still has sciatic pain in his neck, left arm, and lower back down to his left knee. *Id.*

Plaintiff has difficulty with his hands/wrists. He drops things sometimes—"Kind of lose my grip just out of the blue." *Id*. And, he also has pain from time-to-time. At first, the pain was constant but at the time of the hearing, it was sporadic. *Id*. Dr. Mubarak told Plaintiff that he probably had carpal tunnel syndrome, and Plaintiff thinks he confirmed the diagnosis after "an EGM or MG." *Id*. at 133.

Plaintiff struggles with anxiety and depression. *Id.* at 113. He has not seen a psychologist or psychiatrist. Instead, his family-care provider, Granetta L. Rittenour, CNP, treats him. *Id*. Lyrica, which he takes for pain, helps his anxiety and he also takes cyclobenzaprine at night. *Id*.

During the day, Plaintiff watches TV. *Id.* at 134. He also goes on quick trips to the grocery and/or gas station. *Id.* at 134-35. A friend takes him, as he does not have a driver's license. *Id.* at 134. He lost his license because he was not able to afford insurance after he was laid off. *Id.* at 135.

### B. Vocational Expert's Testimony

Theresa Trent, a vocational expert, also testified at the hearing before ALJ Anschuetz. She classified Plaintiff's past work into two jobs: (i) shipping and receiving clerk—medium exertional level (heavy as performed by Plaintiff), SVP 5, skilled; and (ii) sheet metal worker—medium exertional level, SVP 3, unskilled. *Id.* at 137.

The ALJ asked Ms. Trent a hypothetical:

> Assume an individual the same age, education and work experience as Mr. McQuown, who can lift 20 pounds occasionally, 10 pounds frequently. Who can stand and/or walk for a total of six hours during an eight-hour work day. Who can sit for a total of six hours during an eight-hour work

> day. Can never climb ladders, ropes or scaffolds. Can occasionally climb ramps and stairs. Can occasionally balance, stoop, kneel, crouch and crawl. Due to mental health impairments, he's limited to performing simple, routine, repetitive tasks, but not at a production rate. He can have occasional interaction with supervisors, coworkers and the public. He must have the option to sit or stand when he wants, but a total of sitting would be four hours, and total standing would be four hours each day. Can such an individual perform [Plaintiff's past work]?

*Id.* at 137-38. Ms. Trent responded that a hypothetical person with Plaintiff's limitations could not perform his past work because of the exertional levels and SVP. However, there are jobs such a person could perform in the national economy: (1) mail clerk—approximately 25,000 positions; (2) inspector—approximately 50,000 positions; and (3) routing clerk—approximately 39,000 positions. *Id.* at 138.

The ALJ then added another restriction: "this individual is limited to lifting and carrying a maximum of ten pounds. Would the individual still be able to perform the three jobs …?" *Id.* at 138-39. Ms. Trent opined that the three jobs would be eliminated based on the exertional level (probably sedentary level). But, there are other jobs: (1) sorter—approximately 30,000 positions; (2) bench assembler—approximately 40,000 positions; and (3) packager—approximately 40,000 positions. *Id.* at 139.

Plaintiff's attorney also modified the ALJ's hypothetical: would the person be able to perform the same jobs if a limitation of frequent bilateral handling and fingering was added? *Id*. Ms. Trent opined that the person could still perform the same jobs. *Id*. But, a limitation of occasional bilateral handling and fingering with one arm is work preclusive. Further, Ms. Trent opined that there are no jobs that would accommodate a

5

person needing to lie down and sleep during the day; a person can only be off task up to ten percent of the time and be able to work; and missing work two or more days per month is work preclusive. *Id.* at 140.

### III. Standard of Review

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to

6

support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance …." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. The ALJ's Decision

As noted previously, it fell to ALJ Anschuetz to evaluate the evidence connected to Plaintiff's applications for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[1] He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since December 31, 2013.

---

[1] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

7

| | |
|---|---|
| Step 2: | He has the severe impairments of lumbar spondylosis, degenerative disc disease of the cervical spine, panic disorder without agoraphobia, and depressive disorders. |
| Step 3: | He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … subject to the following limitations: (1) Lifting and carrying up to 20 pounds occasionally and 10 pounds frequently; (2) claimant can stand and/or walk for a total of 6 hours during an 8-hour workday, sit for a total of 6 hours during an 8-hour workday, but must have the option to sit or stand when he wants, but still total sitting and standing cannot exceed 4 hours each; (3) claimant can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs; (4) occasional balancing, stooping, kneeling, crouching, and crawling; (5) claimant is limited to performing simple, routine, repetitive tasks, but not at a production rate; and (6) claimant can have occasional interaction with supervisors, coworkers, and the public." |
| Step 4: | He is unable to perform any of his past relevant work. |
| Step 5: | He could perform a significant number of jobs that exist in the national economy. |

(Doc. #6, *PageID* #s 64-79). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 79.

**V.      Discussion**

Plaintiff contends that the ALJ erred in failing to incorporate limitations from carpal tunnel in the hypothetical and residual functional capacity assessment. Further, he argues that the ALJ's step-five finding is not supported by substantial evidence. The Commissioner maintains that the ALJ properly found that there was no basis to restrict

8

the use of Plaintiff's upper extremities. Further, the ALJ reasonably relied on the vocational expert's testimony that Plaintiff could perform a substantial number of jobs.

### A. Carpal Tunnel Syndrome

Plaintiff contends that the ALJ erred at step two of the sequential evaluation by failing to find that his carpal tunnel syndrome was a severe impairment and by failing to properly consider any corresponding limitations in his hypothetical to the vocational expert or in his residual functional capacity assessment.

At step two, the ALJ considers the severity of the claimant's medically determinable impairments. 20 C.F.R. § 404.1520(a)(4)(ii). To determine whether an impairment is severe, an ALJ must consider symptom-related limitations and restrictions:

> If the adjudicator finds that such symptoms cause a limitation or restriction having more than a minimal effect on an individual's ability to do basic work activities, the adjudicator must find that the impairment(s) is severe and proceed to the next step in the process even if the objective medical evidence would not in itself establish that the impairment(s) is severe.

Soc. Sec. R. 96-3p, 1996 WL 374181, at *2 (Soc. Sec. Admin. July 2, 1996).[2] "An impairment or combination of impairments is not severe if it does not significantly limit [the applicant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).[3] The Sixth Circuit has construed step two as a "*de minimis* hurdle." *Higgs*

---

[2] The Social Security Administration rescinded Soc. Sec. R. 96-3p, effective June 14, 2018. Federal Register, Vol. 83, No. 115, page 27816. At the time of the ALJ's decision in this case, Soc. Sec. R. 96-3p was still in effect.
[3] Basic work activities are defined as "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). "Examples of these include: (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5)

*v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted). Under this view, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* (citation omitted).

In the present case, ALJ Anschuetz did not discuss Plaintiff's carpal tunnel at step two and thus, he did not determine whether it is severe or non-severe. But, as Plaintiff acknowledges, an ALJ does not generally commit reversible error by finding that an impairment is non-severe under two conditions: 1) the ALJ also found that the claimant has at least one severe impairment; and 2) the ALJ considered both the severe and non-severe impairments at the remaining Steps in the sequential evaluation. *See Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987); *see also Fisk v. Astrue,* 253 F. App'x 580, 583 (6th Cir. 2007) ("when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'") (quoting *Maziarz* 837 F.2d at 244); *Pompa v. Comm'r of Soc. Sec.,* 73 F. App'x 801, 803 (6th Cir. 2003) ("once the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining [S]teps.") (citation omitted)).

ALJ Anschuetz meets the first condition; he found Plaintiff had four severe impairments. (Doc. #6, *PageID* #66); *see also Pompa*, 73 F. App'x at 803 ("Because the ALJ found that [the claimant] had a severe impairment at step two of the analysis, the

---

Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." *Id.*

10

question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence."). Thus, the question is whether the ALJ considered all of Plaintiff's impairments—including carpal tunnel syndrome—at the remaining steps.[4]

A review of ALJ Anschuetz's decision reveals that he did not discuss carpal tunnel when determining at step three if Plaintiff had an impairment or combination of impairments that meets or equals the Listings. Similarly, at step four, there is no indication that he considered carpal tunnel when assessing his residual functional capacity. Indeed, the ALJ only refers to carpal tunnel twice in his decision. First, he notes that Plaintiff testified, "his doctor told him he probably has carpal tunnel syndrome." (Doc. #6, *PageID* #70). Second, the ALJ concludes, "There is no objective evidence, ie, EMG testing, supporting the presence of an upper extremity impairment, such as carpal tunnel syndrome. As a result, there is no basis to restrict the use of the upper extremities." *Id.* at 73.

Plaintiff did not solely testify that his doctor told him he probably had carpal tunnel. Instead, his lawyer prompted him to "tell the judge what your understanding of that is and how you got to that diagnosis." *Id.* at 133. He responded, "They're trying to track the nerves that are bad to [inaudible]. They did I believe an EMG or MG, came back with carpal tunnel, that Mubarak first had my physical checkup, that I probably had it." *Id*. Plaintiff's statements are supported by Dr. Mubarak's notes which indicate on

---

[4] *See also* Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability Law & Procedure in Federal Court § 3:14 (2015 ed.) (citations omitted) ("[T]he step two determination of severity is merely a threshold requirement. Thus, there is no step two impairment inventory requirement. So long as the limiting effects of the other impairments are considered at steps three, four, and five, the lack of inventory at step two (or a non-severe finding at step two) on those other impairments is usually a harmless error.").

July 21, 2017 that an EMG and NC study were scheduled for that day. *Id.* at 1600. A month later, on August 18, 2016, Dr. Mubarak noted that an EMG and NC study of Plaintiff's bilateral upper extremities and lower extremities was pending. *Id.* at 1601-02.

The ALJ is correct that there are no EMG results in the record. However, there is other objective evidence. Dr. Mubarak noted on three separate occasions, "Bilateral Tinel's sign over wrists and fibular heads."[5] *Id.* at 1567, 1599,1601. He diagnosed carpal tunnel syndrome. *Id.* at 1598, 1602. This is further supported by other treatment records. For instance, on October 14, 2015, Peter A. Bouz, MD, noted that Plaintiff reported numbness and tingling in his fingers. *Id.* at 1355. He also reported numbness in his fingers in November 2015. *Id.* at 781. In June 2016, Plaintiff's physical therapist, Timothy A. Haney noted, "Left cervical paravertebral area radiating into the left upper extremity to the forearm. He also reports paresthesia over the distal left upper extremity." *Id.* at 1293.

The ALJ's lack of meaningful consideration of carpal tunnel syndrome at steps three and four constitutes error under the Regulations. "In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Soc. Sec. R. 96-8p, 1996 WL 374184, at *5 (Soc. Sec.

---

[5] To diagnose carpal tunnel, "tests are performed, which may include: Tinel's sign. In this test, the physician taps over the median nerve at the wrist to see if it produces a tingling sensation in the fingers." *Carpal Tunnel Syndrome: Diagnosis and Tests*, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/diseases/4005-carpal-tunnel-syndrome/diagnosis-and-tests (last reviewed on March 11, 2015); *see also Carpal Tunnel Syndrome*, AMERICAN COLLEGE OF RHEUMATOLOGY, https://www.rheumatology.org/I-Am-A/Patient-Caregiver/Diseases-Conditions/Carpal-Tunnel-Syndrome (last updated March 2019) ("During physical examination, testing may identify weakness of the muscles supplied by the median nerve in the hand …. [T]aping on the wrist with a reflex hammer may cause an electric shock-like sensation (Tinel Sign).").

Admin. July 2, 1996). "And to the extent an ALJ determines that an identified impairment, severe or *non-severe,* does not result in any work-related restrictions or limitations, the ALJ 'is required to state the basis for such conclusion.'" *Katona v. Comm'r of Soc. Sec.,* 2015 WL 871617, at *6 (E.D. Mich. Feb. 27, 2015) (quoting *Hicks v. Comm'r of Soc. Sec.,* 2013 WL 3778947, at *3 (E.D. Mich. July 18, 2013)) (other citations omitted).

In light of the vocational expert's testimony that a restriction to "occasional bilateral handling and fingering with one arm" is work preclusive, limitations resulting from Plaintiff's carpal tunnel are particularly relevant to his ability to perform a job. Yet the ALJ failed to address any limitations or restrictions caused by carpal tunnel. For example, Plaintiff testified, "I do drop things from time to time. Kind of lose my grip just out of the blue. I have pain from time to time. At first it was constant. Now it's sporadic." (Doc. #6, *PageID* #133). Although he used to play the guitar, he has not "even tried to play for a couple of years. [He hasn't] been able to play easily for quite some time." *Id*. Likewise, Plaintiff's physical therapist indicated Plaintiff had upper extremity weakness, decreased grip strength, and decreased upper extremity use. *Id.* at 1295.

The ALJ's assessment of Plaintiff's residual functional capacity is also devoid of meaningful consideration of his combined severe and non-severe impairments. This constitutes error. *See* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . .").

13

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[6]

**B.	Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

---

[6] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

14

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. The Commissioner's non-disability finding is vacated;

2. No finding is made as to whether Plaintiff Matthew McQuown was under a "disability" within the meaning of the Social Security Act;

3. This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

4. The case is terminated on the Court's docket.

June 13, 2019                          *s/Sharon L. Ovington*
                                                         Sharon L. Ovington
                                                         United States Magistrate Judge